SANTIAGO GONZÁLEZ RIVERA, Plaintiff and Appellee, *v.* TEACHERS' RETIREMENT BOARD, Defendant and Appellant.

No. R-64-62.    Decided January 31, 1966.

J. B. *Fernández Badillo*, Solicitor General, Rodolfo Cruz Contreras, Deputy Solicitor General, María Luisa Fuster, Américo Serra, and Manuel Tirado Viera, Assistant Solicitors General, for appellant. Virgilio Brunet for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The Teachers' Retirement Board appeals to this Court from the judgment rendered by the Superior Court, San Juan Part, ordering it to pay $7,940 to appellee for unpaid pensions, deducting from this amount the salaries received by him for work rendered in the Treasury Department from October 1, 1936 to December 31, 1951. In support of this appeal, said Board assigns the commission of three errors by the trial court, namely: (1) in not considering the fact that the case involves a review sui generis which should have been filed within a reasonable term and not fifteen (15) years after the administrative decision had been rendered; (2) in concluding (a) that the pension was suspended not because petitioner recovered from the chronic enteritis which originally caused the granting of the pension but because he was not suffering from pulmonary tuberculosis and (b) that the medical examinations did not show that petitioner was

no longer suffering from chronic enteritis; and (3) in not considering that he had committed laches in spite of having filed the action for mandamus years after the pension had been discontinued.

In order to determine the issue it is necessary to make a brief statement of the facts of the case.

On May 6, 1933, and by order of the Pension Board, Dr. F. de Juan informed the Board by letter that petitioner suffered at that time from chronic enteritis and therefore he was disabled to practice teaching in Puerto Rico. On June 30, 1933, the Board notified petitioner in writing that he had been granted a pension for physical disability of $240 a year beginning the first of the following month of July. This pension was granted pursuant to Act No. 68 of May 8, 1928. The record shows in detail the X-ray reports, medical examinations and others practiced on petitioner by Dr. García Cabrera in relation to "his examination to request a pension for physical disability in the Association of the Employees of the Insular Government." In 1946, pursuant to § 13 (c) of Act No. 161 of May 10, 1945[1] (see History of Pension Funds for Teachers—18 L.P.R.A. p. 90) said Board ordered petitioner to submit to physical examination and for those purposes he was referred to Dr. García Cabrera himself. Petitioner submitted to those examinations in February 1946

---

[1] The aforesaid provision of Act No. 161 in its pertinent part reads as follows:

"Teachers pensioned for physical disability in accordance with this Act or any other previous pension Act, shall be periodically examined by a physician appointed by the board. If such disability disappears, payment of the pension shall be continued for a period of six (6) months counting from the date of the medical examination declaring him cured of the disability."

A similar provision has been included in § 30 of the Teachers' Retirement Act, Act No. 218 of May 6, 1951 (18 L.P.R.A. § 349) where in addition it is provided that "Teachers retired for physical disability shall cease to receive their life annuity as soon as such reason ceases to exist or as soon as they engage themselves in remunerated occupations, provided such remuneration exceeds said life annuity."

and Dr. García Cabrera reported to the Board on the 18th of said month that "we examined the teacher, Santiago González, who informs us that he is retired since 1934 for suffering from pulmonary tuberculosis and that at the present time he works in the Treasury Department where he has worked for several years" and that "It is our opinion that this is a case of a completely cicatrized minimal lesion in the right pulmonis apex which in no way disables him for work." In the report there is a paragraph which reads "Gastrointestinal study does not present any pathological sign or symptom." The said physician examined the petitioner again and on January 2, 1947, reported to the Board that "we found Mr. González in a better general physical condition than in February 1946." The physician made reference to the thorough gall bladder and gastrointestinal studies practiced on petitioner on December 18 and 20, 1946, by Dr. Gándara, the conclusions of which read as follows:

"Gall Bladder—The gall bladder is round, at the level of the 11th dorsal vertebra of average size and of normal homogeneous density. After the fatty meal evacuation of the dye is satisfactory. Conclusion: Normal gall bladder.

"Gastro Intestinal Series: Preliminary study of the chest shows no gross abnormality of the intra thoracic organs. Fluoroscopic and radiographic study of the stomach and small intestine shows no intrinsic defect or functional disturbance of the stomach; the pylorus is long and narrow but offers no obstruction.

"The duodenal bulb and the rest of the small intestine appear normal. Conclusions: Pyloric hypertrophy with slight stenosis and with no mucosal lesion."

On March 12, 1946 the Board informed petitioner about the final conclusions of the medical report of February of that year explaining that in view of the fact that "The ailment which caused the physical disability has disappeared" petitioner's pension would cease pursuant to the provisions of § 13 (c) of Act No. 161 of 1945. And after the examina-

tion of 1947 the Board notified petitioner that it had dismissed the reconsideration of the case.

It was not until August 29, 1962 that the petitioner filed the action for mandamus which we are considering, after having (1) requested on November 20, 1961 permission from the said Board to examine his record, (2) examined it on February 27, 1962, and (3) learned therefrom that his pension had been suspended in 1946 because he no longer suffered from pulmonary tuberculosis when the same had been originally granted because he was suffering from chronic enteritis. On the same day, February 27, 1962, the petitioner requested the Board to restore his pension and on August 24, 1962 said Board denied this petition.

The oral evidence in this case was that of two medical experts. Dr. García Cabrera testified that "In the gastrointestinal study made, if the gentleman (the petitioner) would have being suffering from chronic enteritis it would have appeared." He added that a person suffering from such disease could not give a normal result of gall bladder and gastrointestinal system; that "There is no evidence here of chronic intestinal evidence (sic)"; that when he examined petitioner (in 1946) he was not suffering from chronic enteritis. On cross-examination he admitted that the conclusion of his report was that petitioner was not suffering from pulmonary tuberculosis, but answering questions of the trial judge he added that examination in these cases are extensive. "We do not limit ourselves to the lungs. We examine the entire system. We consider the patient in its organic and physiological entirety." Over appellant's objection, Dr. García Cabrera's report of the examination practiced by him on petitioner in 1933 was admitted in evidence. Finally, and at the request of appellee, Dr. José M. Berio testified that chronic enteritis means chronic diarrhea which can be limited to the small intestine or to the large intestine; that in the report of the medical examination performed on peti-

tioner in 1947 it does not appear "up to what point the study is made, if it was the small intestine, the duodenum . . ."; he said that the radiologist merely says "small intestine" but he does not say what portion, if it reached the whole small intestine; that if this patient had a lesion in the large intestine it was not examined; it was not determined why a study of the large intestine had not been made, and not just radiological. It is necessary to make all the studies of the large intestine and an evaluation thereof as it was done with the small intestine"; that "chronic diarrhea can be caused by sprue or poor absorption and it can cause completely negative X-rays of the small intestine; a 30, a 40% can show lesion in the small intestine but the majority show lesions in many occasions . . . a study should be made thereof, another study . . . . the chronic enteritis could have been caused by a neurogenic condition. . . ." He stated that "from this examination that he (Dr. Gándara) made, his illness cannot be determined, or that this gentleman suffered from chronic enteritis."

There was proof that petitioner worked in the Treasury Department from October 1, 1936, to December 31, 1951 but no evidence whatsoever was introduced of his income after said date.

The trial judge based his decision ordering payment of the unpaid pensions since the Board discontinued them in 1946 but reduced by the amount of the salaries received by petitioner from the Treasury Department up to December 31, 1951, when "The documentary evidence introduced by the parties analyzed in relation to the testimony of Dr. J. M. Berio showed that neither by the first examination nor by the second it could be affirmed that petitioner was no longer suffering from chronic enteritis which, as we stated, was the disease which served as basis for the Teachers' Pension Board to grant petitioner a pension of $20 per month."

We shall consider jointly the first and the third assign-

ment of errors for they raise the question of whether petitioner committed laches in filing his action.

This question was raised in the trial court and the latter decided that the action was filed within the legal term for petitioner filed it a month after his petition that his pension be restored because it had been discontinued on the basis of a disability other than the one he was suffering was denied. We support that the month to which said court made reference is the month between August 24, 1962 when the Board denied the last request made by petitioner that his pension be restored, and the date of the petition for mandamus in this case. Appellee further argues, that the Board induced him to believe that he suffered from pulmonary tuberculosis; that said Board kept him ignorant of the true disease he suffered and for which he was granted the pension in 1933 until it permitted appellee to examine his record in 1961 when he found out, for the first time, that the cause of his disability was not pulmonary tuberculosis but chronic enteritis as diagnosed by Dr. de Juan in 1933.

The facts of the case do not reveal, in our opinion, a deliberate concealment by the Board of petitioner's suffering from chronic enteritis diagnosed in 1933. They rather show that on account of petitioner's error, the examinations practiced on him in 1946 and 1947 were concentrated in determining whether he was still suffering from pulmonary tuberculosis and because of inadvertence on the part of the physician examiner and of the Board, it was not revealed then that the medical records of petitioner which were kept by the Board, showed that the reasons for the pension was disability because of chronic enteritis and not pulmonary tuberculosis. Since chronic enteritis is a disease the physical symptoms of which are manifest and produce intense discomfort, we must assume that if petitioner was still suffering from it in 1946 and 1947, he would have informed the physicians who examined him then about the symptoms he suf-

fered at that time, that is, about the diarrhea affecting him, which information, without dispute, would have induced Dr. García Cabrera to proceed in accordance with the patient's clinical record commenced in 1933. When the pension was discontinued because at the time he was not suffering from pulmonary tuberculosis, it could also be assumed that petitioner would have requested leave to examine his records in the Board as he did in 1961. Although the record does not show that the Board informed petitioner in 1933 of the disease which was the cause for his pension, it is logical to assume that he learned of the illness in the course of the proceeding followed to secure the pension, from the time he underwent the medical examinations by Dr. de Juan and Dr. García Cabrera to whom he was referred by the Board, to the Board's determination granting the pension. The delay in not demanding the right which he claims now, undoubtedly caused prejudice to said Board for since 1948 and periodically since then the Board could have ordered petitioner to be examined to determine whether he was still suffering from the disease which originally justified the pension. *Alonso* v. *Board of Medical Examiners*, 74 P.R.R. 148 (1952); *Jiménez* v. *Pension Board*, 61 P.R.R. 166 (1942).

■ We conclude, therefore, that the fact that petitioner waited 15 years to request leave to examine his record in the Board having discovered then the alleged error on which he bases his petition constitutes an unjustified delay in the filing of this action, whether it be a petition for mandamus or for review sui generis. *Rivera* v. *Pons, Commissioner*, 66 P.R.R. 877 (1947); *Urdaz* v. *Padín, Commissioner*, 48 P.R.R. 297 (1935).[2]

---

[2] The laws governing the rights of the parties in this case do not provide for any proceeding in the courts to review the determination of the Teachers' Retirement Board. *Cf. Correa Suárez* v. *Teachers' Retirement Board*, 88 P.R.R. 571 (1963). Unless we can find in the law an indication

■■ The evidence in this case as to whether by virtue of the medical examinations of 1946 and 1947 petitioner's pension was discontinued because he no longer suffered from chronic enteritis, consisted of the contradictory testimony of two medical experts. This Court is in the same position as the trial court to weigh and assay this evidence. *Concepción Guzmán* v. *Water Resources Authority,* 92 P.R.R. 473 (1965); *Commonwealth* v. *Soc. Mario Mercado,* judgment of May 13, 1965; *Commonwealth* v. *Fonalledas,* 84 P.R.R. 552 (1962). The trial court gave full credit to petitioner's medical expert who, from the reading of the reports of the medical examinations of 1946 and 1947, concluded that if petitioner had a lesion in the large intestine it was not examined, that such situation cannot be determined because a study of the large intestine was not made; that the chronic enteritis can be limited to the small or to the large intestine. This testimony, concluded the trial court, showed "that neither from the first examination nor from the second it could be affirmed that petitioner was no longer suffering from 'chronic enteritis.' " We believe that such a conclusion is erroneous because this expert's testimony was not sufficiently accurate, nor his conclusion controlling, in the sense that such examinations did not show that petitioner was no longer suffering from the cause which originally was the reason for his pension. On the contrary, the physician who examined him in 1933 and then in 1946 and 1947, and who therefore had become better acquainted with petitioner's health condition, testified in an unquestionable manner that a person suffer-

---

of a legislative intent that such determinations are final, the same are subject to judicial review. *Medina* v. *Pons,* 81 P.R.R. 1 (1959). Administrative determinations dealing with privileges or acts of grace as contrasted with a right are also considered final in absence of an express provision in the act. 1 Davis, Administrative Law Treatise, § 7.11 and Vol. 4, § 28 (1958). *Cf.* Weintraub, *Development of Scope of Review in Judicial Review of Administrative Action: Mandamus and Review of Discretion,* 33 Fordham L. Rev. 359 (March 1965).

ing from chronic enteritis cannot give a normal result of gall bladder and gastrointestinal system. By virtue thereof, it was evident from the last two examinations that petitioner was not suffering from chronic enteritis in 1946 and that therefore the discontinuance of his pension was justified at that time. Under the circumstances of the case we believe that Dr. García Cabrera's testimony should have been given full credit and that his conclusion as to the medical question raised in this case was not destroyed by the testimony of the other expert who in effect made some conjectures based on the mere reading of the reports of the medical examinations practiced on petitioner in 1946 and 1947. *Cf. Concepción Guzmán, supra.*

For the reasons stated, the judgment rendered by the Superior Court, San Juan Part, in this case on February 14, 1964, will be reversed, and by virtue thereof the petition filed therein will be dismissed.